## LOTHROP et al. v. ROBERTSON, Commissioner of Patents.
### No. 5300.

Court of Appeals of the District of Columbia.
Argued Jan. 13, 1932.
Decided June 6, 1932.

Rehearing Denied Oct. 8, 1932.

Samuel Herrick, of Washington, D. C., and James A. Carr, of St. Louis, Mo., for appellants.

T. A. Hostetler, Solicitor of Patent Office, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District dismissing appellants' bill filed under the provisions of section 4915, R. S. (tit. 35, U. S. C. § 63 [35 USCA § 63]).

Two patent applications are involved: No. 488260, filed July 28, 1921, for a process for making conical rollers used in roller bearings; and No. 530643, filed January 20, 1922, for the roller produced by that process.

It is conceded that conical or taper roller bearings were not originated by appellant Lothrop. The claim is that he has devised a method by which rollers for such bearings may be made much more economically than by any previously known method.

The process consists in coining or forging a substantially cylindrical slug in a tapered die or dies to produce an unfinished roller of the size and taper desired, with depressions in the ends suitable for centering it in a grinding machine. The volume of the slug is approximately equal to the volume of the finished roller, a slight allowance being made for grinding. The slug is placed in the cylindrical bore of a lower die, and is swaged in the partly cylindrical and partly tapered bore of the vertically movable upper die by pressure exerted by the plunger of the lower die, whereby the slug is shortened endwise and spread laterally to conform to the surface of the upper die. It is thus converted into a blank, and at the same time a central depression is formed in the lower end of the blank by an accurately centered projection on the face of the plunger. The blank is then subjected to pressure in another die by means of a plunger die and a knockout piece, having a projection adapted to form a centering depression on the upper end of the roller. The taper of the bores of the die is the same as de-sired for the finished product, so that the roller is forged to the desired shape. It is then carburized and hardened.

In the thirteen claims of the process application, the operation is variously characterized as "coining," "forging," "upsetting," and "shortening and thickening" the slug. We reproduce counts 1, 2, 3, and 7 as illustrative of the group:

"1. The improvement in the art of making conical rollers, which consists in progressively coining a slug in a series of dies of which the last is of the size and taper desired for the roller.

"2. The process of making conical rollers which consists in coining a slug of substantially the same volume as the finished roller in a conical die or dies to form a green roller of approximately the size and shape desired for the finished roller and carburizing and hardening said green roller.

"3. The process of making conical rollers which consists in coining a slug in a conical die or dies to form a green roller of approximately the size and shape desired for the finished roller and with centering depressions in its opposite ends concentric with the axis thereof, carburizing and hardening said roller, mounting it on centering spindles entered into the end depressions thereof and grinding the surface thereof while thus centered."

"7. The process of making conical rollers for roller bearings which comprises shortening and thickening a cylindrical slug of substantially the same volume as the finished roller by pressure against the ends thereof while in a conical die of the size and taper of such roller."

From the decisions of the Patent Office tribunals, it appears that claims 1 and 2 of the application were formerly allowed and involved in interference No. 47230, Lothrop v. Bock. The operation characterized as "coining" in these two claims was then called "upsetting," and constituted counts 2 and 3 of the interference. Lothrop moved to dissolve the interference on the ground that Bock's operation was not "upsetting"; hence that he could not make the claims of the issue. The law examiner held that "upsetting" did not correctly describe the operation of either party, but that the actual operations of both parties were essentially the same. The law examiner then allowed a motion to amend by adding new counts, differing from the former counts in the use of the word "forging" instead of "upsetting." Thereupon the French patent to Renault, No. 491251, was brought

to the attention of the examiner, and he held it to be a statutory bar to Lothrop's right to a patent for the subject-matter of the proposed counts. The law examiner ruled that proposed count 3 (substantially present claim 2) differed from proposed count 1 in the act of carburizing and hardening the green roller, which, in view of the prior art, did not involve invention. Thereupon the interference was dissolved, and neither party appealed.

Lothrop then attempted to prosecute his application ex parte. The examiner held that claims 1 and 2 of the application are substantially the same as proposed claims 2 and 3 of the interference, differing only in the use of the word "coining" instead of "forging." The examiner said: "Coining is understood to be that form of forging in which the article forged is entirely enclosed in, and completely fills the die cavity. * * *. The applicant can not now obtain in an ex parte proceeding what he has been denied inter partes."

The Board of Appeals ruled that the rejected claims of this application are substantially the same as counts 2 and 3 of the Lothrop-Bock interference; that claim 7 is substantially the same as claim 1 of that interference. The Board said: "It is clear that the nonpatentability of these claims has been passed upon and is res adjudicata." The Board ruled that the other claims of the application, involving the formation of the centering depressions in the roller while being shaped in the die and the steps of carburizing and hardening the roller after it is formed, were not patentable in view of the prior art.

█ The doctrine of res judicata, or estoppel by former judgment, applies to adjudications of the Patent Office tribunals. Blackford v. Wilder, 28 App. D. C. 535; In re Marconi, 38 App. D. C. 286. In United States ex rel. Newcomb Motor Co. v. Moore, 30 App. D. C. 464, 476, we expressly ruled that the remedy of a defeated party in an interference proceeding is by way of appeal; that "he has no right whatever thereafter to prosecute the claims of the issue in an ex parte case." See, also, In re Capen, 43 App. D. C. 342; In re Doble, 57 App. D. C. 10, 16 F. (2d) 350. The Patent Office correctly ruled, therefore, that the decision in the interference case as to the nonpatentability of these process claims is res judicata.

Coming now to consider the twenty article claims, we reproduce, as illustrative, claims 1, 4, and 12.

"1. A roller consisting of a slug upset endwise throughout its length and axially recessed in its ends inside a forming die."

"4. A die-formed roller for a roller bearing made by the upsetting of a slug against the side of a die of circular section, said roller being case-hardened and having its main bearing surface free from marks of finishing tools whereby the entire case resulting from the hardening operation is preserved in the finished roller."

"12. A roller having axial recesses in its ends, the rim portions of said recesses or one of them having conical bands concentric with the axis of the roller and said ends having marks as and for the purpose set forth."

█ These claims, as held by the Patent Office, define the article by the steps of the process set forth in the prior claims hereinabove held to be unpatentable. In other words, these claims, if allowed, would result in a patent for substantially the same invention as that covered by the disallowed process claims. In considering the grounds of rejection, the Board of Appeals said: "The first ground is that the claims define the article by reciting the method of making it and therefore are not divisible from the claims in appellant's copending application Serial No. 488260 for the method of making the roller. * * * As to the shape of the roller the claims of the instant case do not patentably distinguish from the prior art. The patents to Griffin and Huther show that it is old to provide tapered rollers of this character with axially located conical recesses in their ends. The patent to Miller shows a recessed end of a roller having a frusto-conical band surrounding the recess. There would be no invention in duplicating this shape at both ends of the roller, in view of either Griffin or Huther. Nor would it be invention to use the shape disclosed by Miller, at the opposite ends of the roller shown in Fig. 12 of Griffin."

The decree is affirmed.

Affirmed.