## In re LYON.

### Patent Appeal No. 3687.

Court of Customs and Patent Appeals.

Dec. 7, 1936.

The Firm of Charles W. Hills, of Chicago, Ill. (Charles W. Hills, Jr., and Charles F. Meroni, both of Chicago, Ill., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the United States.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Eight claims, numbered 12 to 19, inclusive, of appellant's application for patent, serial No. 584,561, for "Combination Tire Cover and Hub Guard," are involved in this appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner rejecting them.

The Board's rejection of all the claims is based primarily upon estoppel resulting from appellant's failure to take certain steps in an interference proceeding in which his application became involved. The claims are divisible into two groups, 12 to 14 inclusive, constituting one group, and claims 15 to 19, inclusive, constituting the other group. Broadly, the rejection of all the claims rests upon estoppel, but the grounds held by the tribunals of the Patent Office to constitute estoppel differ as to the two groups. Upon the record, it seems appropriate here to consider first the group numbered 15 to 19, inclusive, and, in view of our conclusion upon certain questions of law, it is unnecessary to quote illustrative claims of either group.

Appellant's application was filed January 2, 1932.

On March 7, 1933, a patent issued to one Charles F. Lambert, being No. 1,900,822, based upon an application, serial No. 639,809, filed October 27, 1932, for "Spare Wheel and Tire Cover Assembly." On March 29, 1933, appellant, for the purpose of bringing about an interference, moved to add to his application as claims numbered 7 to 11, inclusive, claims 1, 2, 3, 4, and 8 of the Lambert patent. The motion was denied by the Examiner as to all except his proposed claim 10 which corresponded to claim 4 of the patent, the ground of denial being that appellant's disclosure did not support the other proposed claims.

On June 14, 1933, an interference was declared as to patent claim 4, and in addition to appellant and Lambert three others were made parties to the interference, viz.: Arthur P. Fergueson, upon an application filed October 14, 1932; Herbert S. Jandus, upon an application filed December 9, 1932, and Thomas J. McCormick et al., upon a joint application filed February 27, 1933.

It will be observed that appellant's application was the senior application of the interference.

From time to time during the prosecution of the interference various motions were made by the different parties thereto. Many of these motions are of no interest here, but, for the purpose of clarifying the issues before us, it is necessary to state certain of them together with the actions thereon.

McCormick et al. and Jandus each made motions that claims 1, 2, 3, 5, 6, 7, and 8 of the Lambert patent be added to the interference. This motion was granted by the Examiner of Interferences as to certain of the parties, but right to contest priority upon all of them was denied Fergueson and appellant, it being held that their application did not "support any of the Lambert claims." Also, Jandus was denied the right to contest priority as to claims 5, 6, and 7 of the Lambert patent. Further, motions to dissolve the interference upon the original count (which was claim 4 of the Lambert patent) were sustained as to appellant and as to Fergueson upon the ground that their applications did not support it, and on January 7, 1935, appellant, in the prosecution of his application ex parte, canceled claims 7, 8, 9, 10, and 11 therefrom, apparently under the belief that broader claims such as appealed claims 12, 13, and 14 would be allowed him, but, after these broader claims had been disallowed, the claims so canceled were reinserted, as Nos. 15, 16, 17, 18, and 19. They correspond respectively to claims 1, 2, 3, 4, and 8 of the Lambert patent.

The decision of the Examiner of Interferences was rendered August 11, 1934, and requests for reconsideration of certain phases thereof, made by only two of the parties, viz., Fergueson and McCormick et al., were considered with decision thereon September 6, 1934. In connection with the latter decision the time for appeal to the Board was extended to September 17, 1934. There was no award of priority by the Examiner.

Both Fergueson and Jandus took interlocutory appeals to the Board from so much of the decision of the Examiner of Interferences as was adverse to them, but appellant Lyon, although the decision entirely eliminated him from the interference, took no appeal. The brief on behalf of appellant before us in the instant case gives the following explanation of his failure to appeal:

"The applicant Lyon assumed from the fact that these [the Fergueson and Jandus] appeals also involved his application that it was not necessary for him to lodge a separate interlocutory appeal, and therefore did not file an independent appeal with the Board of Appeals, since he was content to rely upon the appeals of the parties Fergueson and Jandus."

The appeals of the parties Fergueson and Jandus are stated to have been pending at the time of the decision of the Board upon appellant's ex parte appeal, and, so far as the record discloses, have not yet been determined.

In passing upon claims 15 to 19, inclusive, of appellant's application as prosecuted ex parte, the Examiner followed the decision of the Examiner of Interferences in the interference proceeding and held that appellant's disclosure did not support the claims, and also referred to the fact that appellant had not appealed from the interference decision, adding, in his statement, "He is, therefore, now taking an appeal ex parte on a matter which apparently should have been appealed inter partes." The Board rested its decision as to this group of claims primarily upon the failure of appellant to take interlocutory appeal in the interference proceeding, but also seemingly found "no error" in the holding that appellant had no right to make the claims, although stating that such question "is not strictly before us."

The rejection of claims 15 to 19, inclusive, therefore, rests primarily upon the ground that the decision of the Examiner of Interferences (following the earlier decision of the Primary Examiner), holding that appellant's disclosure did not support them, became res adjudicata (although the tribunals of the Patent Office did not use that term) upon appellant's failure to take appeal under rule 124 of the Patent Office, and that, as a consequence of such failure, appellant is estopped from prosecuting the claims ex parte in the instant proceeding.

Rule 124 of the Patent Office, among other things, provides: "124. Where, on motion for dissolution, the primary examiner renders an adverse decision upon the merits of a party's case, as when he holds that the issue is not patentable or that a party has no right to make a claim, he shall fix a limit of appeal not less than twenty days from the date of his decision. Appeal lies to the board of appeals and will be heard inter partes. If the appeal be not taken within the time fixed, it will not be entertained except by permission of the Commissioner."

Following this rule, the Examiner of Interferences fixed the time limit of appeal as August 31, 1934, subsequently, as has been recited, extending such time to September 17th. The appeals on behalf of the parties Jandus and Fergueson were filed August 31, 1934, while the requests for re-

consideration by Fergueson and McCormick et al., above alluded to, were still pending, and it is noted that both Jandus and Fergueson seem to have been represented by the same attorney who represented appellant in the Patent Office. There is no explanation of this in the record, but it is assumed that no actual conflict of interest existed between the several parties named which rendered it improper for the same attorney to appear on behalf of each, and the fact is recited merely to show that appellant is particularly chargeable with actual notice of the time limit for appeal.

So far as the record discloses, appellant, after failing to appeal within the time limit fixed, never thereafter sought permission of the Commissioner to appeal, as apparently he might have done under the rule.

It is argued on behalf of appellant, in substance, that rule 124, supra, is a regulatory measure, citing Newcomb v. Lemp, 1904 C.D. 412; that it does not make it mandatory that an applicant take interlocutory inter partes if he is to preserve his statutory right to an ex parte appeal to this court; that the authority for the rule is found in R.S. § 483 (35 U.S.C.A. § 6 and note), and that proceedings under it, are merely interlocutory, citing United States ex rel. Lowry and Planters Compress Company v. Allen, Commissioner of Patents, 203 U.S. 476, 27 S.Ct. 141, 51 L.Ed. 281, 1906 C.D. 765. Further, it is urged that, if the rule be construed to be mandatory, the Commissioner exceeded his authority in adopting same "since it contravenes Lyon's statutory rights as provided for in sections 4909 and 4911 [as amended (35 U.S.C.A. §§ 57, 59a)]." It is also pointed out that under the authorities this court will not entertain an appeal from a decision by the board upon an interlocutory question when there has been no adjudication of priority.

We are unable to agree that rule 124, which has been long in effect, is in excess of the authority conferred upon the Commissioner by R.S. § 483, or that failure to comply therewith may not result in a party losing his right to prosecute claims in an ex parte case, such as that before us here.

The immediate effect of granting appellant claims 15 to 19, inclusive, necessarily would be to bring about a redeclaration of an interference upon claims, which already have been adjudged in a regular interference proceeding, not to be supported by appellant's disclosure. It is not seen where any good or proper purpose could be accomplished thereby, nor is it seen where appellant has lost any rights unless he has lost something by his own negligence. If appellant felt that he was deprived of rights by the decision of the Examiner of Interferences, he should have protected himself by taking an interlocutory appeal for himself. It is not seen how the interlocutory appeals of the other parties can be held to inure to his benefit, since all contentions on his part were decided against him, and the appealing parties are no longer concerned therewith.

Under the facts recited, we are of opinion that there was no error in the holding to the effect that, by reason of appellant's failure to take interlocutory appeal from the decision which eliminated him from the interference, the finding of the Examiner of Interferences that appellant had no right to make claims 15 to 19, inclusive, became res adjudicata, with the result that appellant may not prosecute the claims in this ex parte proceeding.

In view of our holding upon this phase of the controversy, it is unnecessary for us to consider whether appellant's disclosure supports claims 15 to 19, inclusive.

We turn now to the group comprehended in appealed claims, numbered, respectively, 12, 13, and 14.

It does not clearly appear from the record just when these claims were inserted into appellant's application, but it does appear that claim 12 was contained therein prior to and during the time appellant was involved in the interference. In the final decision of the Examiner, it was said: "Claims 12, 13 and 14 appear to be drawn to allowable subject matter and stand finally rejected solely on the ground of estoppel."

In the Examiner's statement following the appeal to the Board it was said: "Claims 12, 13 and 14 of this application which are broad enough to dominate the issue and also all of the subject matter of the parties involved in interference No. 66,239 stand finally rejected on the ground of estoppel."

In its decision the Board said:

"As to the broader claims, 12, 13 and 14, it is the Examiner's view that appellant should have moved to include these claims in the interference proceeding by motion under Rule 109. These claims are readable upon the other parties' disclosures, if they are readable upon appellant's.

"Appellant was the senior party in said interference proceeding and he therefore contends that it was not incumbent upon him to propose the additional counts, one at least of which was standing in his application at the time. It is further urged that because of the fact that one of the parties was a patentee, it would not be possible to have additional counts incorporated in the interference and that therefore it is not incumbent upon applicant to propose such counts. This contention overlooks the fact that other parties were not patentees and that such other parties might be dominated by the broader claims. These parties were not under order to show cause and conceivably might have been able to prove priority on the claims in question."

Before us appellant has reiterated with emphasis the various arguments which, we deduce from the record, were made before the tribunals of the Patent Office, and by them fully considered.

It is said here, in substance, that as early as November 28, 1932, appellant, understanding that Lambert's application was pending, requested declaration of an interference between it and his application, but that the Examiner, instead of taking steps toward declaring such interference, suggested to Lambert how his application could be amended to render certain claims allowable, and that upon the claims being so amended the Lambert patent issued. The record sustains the contention as to a suggestion having been made to Lambert that certain limitations inserted in certain of his claims might render them patentable, but we are not cited to any violation of Patent Office practice in regard to this phase of the controversy, and nothing is disclosed by the record which indicates that appellant is entitled to relief growing out of this circumstance.

The real gravamen of the contention on behalf of appellant as to this group of claims is that, as senior party, it was not incumbent upon him, under the particular facts here appearing, to bring a motion under rule 109 of the Patent Office to have the subject matter of the claims carried into the interference, and much attention is given to an amendment to the rules which added to rule 116 (providing that parties to an interference will be presumed to have made their inventions in the chronological order in which their applications were filed) a paragraph reading:

"The termination of the interference by dissolution under rule 122 without an award of priority shall not disturb this presumption, and a party enjoying the status of a senior party with respect to any subject-matter of his application shall not be deprived of any claim to such subject-matter solely on the ground that such claim was not added to the interference by amendment under rule 109."

The foregoing amending paragraph was dated July 24, 1934, and became effective as of August 21, 1934, which was subsequent to the decision adverse to the appellant by the Examiner of Interferences, although prior to the date fixed as the limit of appeal from that decision. Accompanying the amendment was an instruction from the Commissioner of Patents, reading:

"The amended rule will not apply to applications involved in interferences which have been finally decided prior to August 21, 1934, and will not apply to pending interferences which on that date have progressed beyond the period for filing motions under rules 109 and 122."

A further contention on behalf of appellant is, in substance, that since interference No. 66,239 was declared upon the claim of Lambert's patent, appellant could not have introduced claims 12, 13, and 14 as between Lambert and himself; that Lambert made no application for a reissue of his patent to include the subject matter of such claims; that the other parties, who were junior to appellant, "made no effort to ask" for an additional interference based upon such claims; that the failure of Lambert and the other parties so to act constituted conduct amounting to a concession "that in any event they could not be regarded as the first inventors of that subject matter"; that appellant had "served notice on the other parties to the interference that he was endeavoring to obtain the allowance of broader claims in his application, since he had presented claim 12 in his application prior to the declaration of the interference"; that under such circumstances he, as senior party, is not estopped, after the interference, to insist on broad claims, and that under the facts here appearing the proper tribunal of the Patent Office should have proceeded under rule 96 and declared a second interference "to get the issues between the proper parties."

Authorities cited in connection with the foregoing contentions are Ex parte Gustav Johnson (decision on second request for rehearing) 20 U.S.Pat.Q. 284; In re Chase, 71 F.(2d) 178, 21 C.C.P.A.(Patents) 1183;

International Cellucotton Products Company v. Coe (App.D.C.) 85 F.(2d) 869, 30 U. S.Pat.Q. 366 (decided August 31, 1936).

Appellant contends that an application of the doctrine of estoppel would be an extension of that doctrine beyond former decisions, and cites statements of this court, indicating our indisposition to extend the doctrine, made in the cases of Rauen v. Aiken, 74 F.(2d) 956, 22 C.C.P.A.(Patents) 903, and in Re Long, 83 F.(2d) 458, 23 C. C.P.A.(Patents) 1078.

It is proper to say that, following the Board's decision in the instant case, appellant petitioned the Commissioner to exercise his supervisory authority to the extent of ordering the Primary Examiner to set up an interference based upon claims 12, 13, and 14. The petition was denied for substantially the same reasons advanced by the Examiner and the Board in applying the doctrine of estoppel in the ex parte proceeding.

Appellant's several contentions and the authorities alleged to support them have been carefully examined and considered.

We do not feel that appellant is in a situation where he can derive any benefit from the amendment to rule 116, supra, in view of the official instruction of the Commissioner accompanying same, which, to all intents and purposes, was a part thereof. We think it must be held, as was held by the tribunals of the Patent Office, in effect, that on August 21, 1934, the effective date of the amendment, interference No. 66,239 had progressed beyond the period when motions might be filed under rules 109 and 122.

In the petition to the Commissioner above alluded to, it was insisted that interference No. 66,239 was still in the motion stage because of the addition of a new party thereto, with a consequent redeclaration of the interference. The redeclaration is dated November 10, 1934. It is true that appellant was mentioned as a party in this redeclaration, but this must be regarded as a mere formality in stating the style of the case, since he had, in fact, been eliminated by the decision of the Examiner of Interferences on August 11, 1934, no appeal having been taken by him therefrom. In the redeclaration, the Examiner stated: "The issue of the interference remains the same," and the Commissioner, in his decision upon the petition, pointed out that the "second interference involves only one of the other parties to the original interference."

Since appellant is not in position to derive any benefit from amended rule 116, the only remaining question is whether the particular facts of this case so distinguish it, in principle, from the facts in other cases where this and other courts have sustained application of the doctrine of estoppel, as to render improper the application of that doctrine here.

We are unable to find that such is the situation. It is not claimed by appellant that there is any error in the holding of the Board that claims 12, 13, and 14 "are readable upon the other parties' disclosures, if they are readable upon appellant's," and the other parties, as the Board stated, were not under order to show cause why judgment of record upon the question of priority should not be entered against them. For aught that the record discloses, they may be prior in fact.

The general rule respecting estoppel because of failure to take action under rule 109 is stated in the case of In re Brashares, 74 F.(2d) 751, 22 C.C.P.A.(Patents) 873, and particularly in the cases therein cited. Also it is stated in the case of In re Alexanderson, 69 F.(2d) 541, 21 C.C.P.A.(Patents) 983, where we held that Alexanderson, although he had been senior party in an interference, was estopped in an ex parte prosecution because he had failed, during the interference, to proceed under the rule. An examination of the cases where this and other courts have refused to sustain application of the doctrine of estoppel because of failure to act under the rule will disclose that in each of those cases the facts were different from those here before us.

There was no extension of the doctrine of estoppel in the instant case beyond the point to which heretofore the courts have gone, and we find nothing in the facts of this case which renders application of the doctrine improper here.

The decision of the Board of Appeals is affirmed.

Affirmed.